**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:15-CR-175-GZS |
| v. | ) | |
| | ) | |
| JOEL A. SABEAN, M.D. | ) | |

# GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through Richard W. Murphy, Attorney for the United States Acting Pursuant to Authority Conferred by 28 U.S.C. § 515, and David B. Joyce and James W. Chapman, Assistant United States Attorneys, hereby submit this trial brief to apprise the court of any legal and evidentiary issues that may arise during trial.

## I. STATUS OF THE CASE

A. This matter is scheduled for jury selection on October 31, 2016. Trial is scheduled to commence on November 1, 2016.

B. The Government is expected to call approximately twenty-five witnesses in its case-in-chief.

C. The Government expects to complete its case-in-chief in four to five days.

## II. THE CHARGES

Dr. Joel Sabean is charged in a 58 count indictment with tax evasion (Counts 1-5), distribution of controlled substances other than for a legitimate medical purpose and outside the usual course of professional practice (Counts 6-57), and health care fraud (Count 58).

## III. ELEMENTS OF THE CHARGED OFFENSES

The elements of tax evasion, in violation of Title 26, United States Code, Section 7201 are:

(1) The defendant owed substantially more federal income tax for the years 2008, 2009, 2010, 2011, and 2012 than was indicated as due on his federal income tax return;

(2) The defendant willfully attempted to evade or defeat the assessment of this tax; and

(3) The defendant committed an affirmative act in furtherance of this willful attempt.

The elements of distribution of controlled substances other than for a legitimate medical purpose and outside the usual course of professional practice, in violation of Title 18, United States Code, Section 841(a)(1) are:

(1) The defendant distributed a mixture or substance containing a controlled substance, or provided a prescription for a mixture or substance containing a controlled substance;

(2) The defendant did so knowingly or intentionally; and

(3) The defendant intentionally distributed the controlled substance, or provided a prescription for the controlled substance, other than for a legitimate medical purpose and outside the usual course of professional practice.

The elements of health care fraud, in violation of Title 18, United States Code, Section 1347 are:

(1) A scheme, substantially as charged in the indictment, to defraud a health care benefit program, or to obtain by false or fraudulent pretenses, representations, or promises any money and property owned by or under the custody or control of such a program;

(2) The defendant's knowing and willful participation in this scheme with the intent to defraud; and

(3) The scheme was in connection with the delivery of, or payment for, health care benefits, items or services.

## IV. SUMMARY OF THE EVIDENCE

Between January 2008 and December 2013, the defendant sent money to his adult daughter who resided in the State of Florida. These money transfers were made using a variety of methods, including Western Union, MoneyGram, PayPal, cash deposits at bank branches in Maine with subsequent withdrawals at branches in Florida, and purchase of stored value cards. The transfers often totaled several thousand dollars a day, several days per week. In sum, the defendant sent over $2.3 million to his daughter during this time period.

To explain these cash outlays when questioned by his bookkeepers or his wife, the defendant created a fictitious cover story. He claimed that his daughter was injured when a vehicle ran over her foot. During her subsequent hospitalization, she contracted a drug resistant staph infection, which lead to organ failure, a kidney transplant, numerous heart surgeries, cancerous tumors, and other serious medical ailments. According to the defendant, this caused his daughter to incur hundreds of thousands of dollars in medical expenses each year. To advance this cover story, the defendant directed his daughter to create and send to him phony medical bills so he could substantiate his claims to his wife and bookkeepers. These fictitious medical invoices totaled approximately $3 million for the years 2008 through 2012. The defendant's daughter continued to send fictitious invoices to her father into 2013.

During the years 2008 through 2014, the defendant also wrote or called in prescriptions for his daughter, for both controlled and non-controlled drugs. In some cases, the defendant issued the prescriptions for his daughter in the names of others, including in the name of his wife. The defendant's daughter paid for these drugs in part with the cash the defendant sent to her. The drugs written in the name of the defendant's wife were paid for at least in part by Aetna. The defendant's daughter was not a member of this insurance plan.

Counts 1 through 5 allege that the defendant willfully attempted to evade and defeat his federal income taxes with respect to the tax years 2008 through 2012. Specifically, the indictment alleges that the defendant overstated his Schedule A deductions resulting in an understatement of taxable income and tax due and owing. The false Schedule A expenses consisted of the expenses purportedly incurred by his daughter while residing in Florida, as purportedly documented by the fictitious invoices.

Counts 6 through 57 allege that the defendant unlawfully issued prescriptions for controlled substances for his daughter. Although he was registered with the DEA to issue

prescriptions for controlled drugs, the defendant's prescriptions for his daughter were invalid because they were issued outside the usual course of professional practice or without legitimate medical purposes, in violation of DEA regulations. Moreover, some of these prescriptions were issued in the name of the defendant's wife even though the controlled substances were intended for the defendant's daughter. These prescriptions began in November of 2007 and ended in January of 2014.

The Government intends to prove that these prescriptions were issued outside the usual course of professional practice because, among other things, the defendant prescribed them to a close family member, in violation of the American Medical Association's Code of Medical Ethics, this family member was not actually a patient of the defendant, and he issued these prescriptions long distance, without the benefit of face to face medical examination.

In Count 58, the defendant is charged with willfully executing a scheme to defraud health care benefit programs, namely Aetna and CVS pharmacy. The evidence will show that some of the prescriptions that the defendant wrote or called in for his daughter, one in June of 2008 and several beginning in March of 2010 and ending in November of 2013, were issued in the name of the defendant's wife. At the time in question, the defendant's wife had insurance through Aetna. By issuing prescriptions in his wife's name, the defendant knew that his daughter would obtain these drugs from her local pharmacy under false pretenses and pay for them at least in part through Aetna insurance coverage.

## V. LEGAL ISSUES

### *A. The Controlled Substances Act as Applied to Medical Doctors*

The Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*. (hereinafter "the CSA"), established a closed regulatory system of drug distribution. *Gonzales v. Raich*, 125 S. Ct. 2195, 2203 (2005). All manufacturing, distribution and use of controlled substances is illegal "except

as authorized by the CSA." *Id.*; 21 U.S.C. § 841(a). Federal law classifies all controlled substances into five schedules, based on their accepted medical uses, their potential for abuse, and their psychological and physical effects on the body. 21 U.S.C. §§ 811, 812; *Raich*, 125 S. Ct. at 2203-04. Schedule IV substances have a lower abuse risk of dependence with a potential for limited physical or psychological dependence and are accepted in medical applications. 21 U.S.C. § 812(b)(4).

The regulations under the CSA require that doctors who wish to issue prescriptions for controlled substances be licensed to practice medicine and register with the Drug Enforcement Administration ("DEA") and obtain and maintain a valid DEA registration number. 21 C.F.R. § 1306.03. A DEA registrant may issue written or oral prescriptions for a Schedule IV controlled substance. However, if a registrant issues an oral prescription, the pharmacist must promptly reduce the prescription to writing. 21 C.F.R. § 1306.21(a). For a prescription to be an "effective" prescription, it must "for a legitimate medical purpose issued by a practitioner acting in the usual course of professional practice." 21 C.F.R. § 1306.04. A prescription is required to "bear the full name and address of the patient." 21 C.F.R. § 1306.05(a). A registrant that knowingly issues a purported prescription not in the usual course of professional practice subjects himself to criminal prosecution for unlawful distribution pursuant to 21 U.S.C. § 841. *See United States v. Moore*, 423 U.S. 122, 140 (1975); *United States v. Badia*, 490 F.2d 296, 298 (1st Cir. 1973). *See also* 21 C.F.R. § 1306.04(a).

The terms "in the usual course of professional practice" and "for a legitimate medical purpose" are not two separate standards. Rather, they are two ways of expressing the same concept. *See United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993); *United States v. Pleson*, 560 F.2d 890, 896, n.6 (8th Cir. 1977). It is axiomatic that in order for a prescription to be issued in the usual course of professional practice, there must be a legitimate doctor-patient relationship.

*B. Willful Blindness*

If Defendant argues that he believed his daughter faced the medical issues he described to his bookkeepers, the Government expects to show that the defendant either knew his daughter was not experiencing the medical issues he claimed, or that the defendant deliberately avoided acquiring knowledge of her true condition. A willful blindness instruction is appropriate for all counts in the Indictment.

## VI. EVIDENTIARY ISSUES.

*A. Internal Revenue Service Documents*

The Government expects to offer into evidence documents from an Internal Revenue Service Center with respect to the defendant. These documents will include certified tax returns and transcripts of account, which are self-authenticating and admissible pursuant to Fed. R. Evid. 803(6) and 902(4).

*B. Business Records and Certificates of Authenticity*

Hearsay statements may not be admitted unless they fall within an exception or exclusion to the hearsay rules. Fed.R.Evid. 802. Under the business records exception, records kept in the course of regularly conducted business activity are admissible unless the circumstances indicate lack of trustworthiness. Fed.R.Evid. 803(6). The foundational requirements for Rule 803(6) are:

(1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the records in the regular course of the business activity; and (4) that such records were regularly kept by the business. *United States v. Reilly*, 33 F.3d 1396, 1413 (3d Cir. 1994).

It is unnecessary for the record's author or custodian to provide the foundational evidence for the admission of a business record. Fed.R.Evid. 803(6). A qualified witness need only be a person who can explain how a record was kept, not necessarily be the person who actually prepared the record. *United States v. McGill*, 953 F.2d 10, 14-15 (1st Cir. 1992) (assistant supervisor of bank's coupon collection center competent to lay foundation); *United States v. Patterson*, 644 F.2d 890, 900-01 (1st Cir.1981); 4 J. Weinstein, *Weinstein's Evidence*, ¶ 803(6)[02]; *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir.1985). A witness is qualified if he is familiar with the record-keeping system and can attest to the foundational requirements. *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993).

It is unnecessary under Rule 803(6) for the proponent of a business record to produce or identify the specific individual upon whose first-hand knowledge the record was based. *See* 30B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Federal Rules of Evidence*, § 7047 (2001). Instead, "Rule 803(6) is based upon the realization that the dependability of regular entries rests upon proof of a routine of making accurate records, rather than upon the testimony of each participant that he himself was accurate. Lack of personal knowledge of the entrant or maker may be shown to affect the weight to be given to the record, but does not affect its admissibility." *Id.*; *see also United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (recognizing that Rule 803(6) does not require the witness who lays the

foundation "to be the author of the record or be able to personally attest to its accuracy") (citations omitted). Likewise, Rule 803(6) does not require the business which has custody of the records to be the business which actually created the records. *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (invoice received from other company properly admitted).

The Government may offer into evidence documents that are records of regularly conducted business activity. As such, they are admissible as exceptions to the hearsay rule pursuant to Rule 803(6) of the Federal Rules of Evidence. These documents include phone records, financial records, airline records, hotel records, and others. The Government anticipates using Certificates of Authenticity pursuant to Rule 902(11) of the Federal Rules of Evidence to avoid having to call record custodians to establish that the documents in question are authentic records of regularly conducted business activities. Notice has already been provided to the defense. However, the Government reserves the right to have witnesses explain records that are not self-explanatory.

### *C. Other Acts Evidence*

Rule 404(b) of the Federal Rules of Evidence governs the admission of evidence of other crimes, wrongs, or acts and prohibits the admission of such evidence to prove that the defendant has the propensity to commit crimes of the sort for which she is on trial:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). "The most striking aspect of the rule is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject

only to the rarely invoked limitations of Rule 403." *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir. 1984); *see also United States v. Escobar-de Jesus*, 187 F.3d 148, 169 (1st Cir. 1999).

The First Circuit uses a two-part test to determine the admissibility of 404(b) evidence. *United States v. Houle*, 237 F.3d 71, 77-78 (1st Cir. 2001). As the court stated in *Houle*,

> First, the evidence must be specially probative of an issue in the case--such as intent or knowledge--without including bad character or propensity as a necessary link in the inferential chain. The probative value of the evidence must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged. Second, if the proffered evidence has special relevance, it is nonetheless inadmissible if its probative value is substantially outweighed by the danger of, inter alia, unfair prejudice, confusion of the issues, or misleading the jury.

*Id.* (internal punctuation and citations omitted).

The Government will offer evidence of other prescriptions issued by the defendant in the names of other people close to his daughter that are outside the usual course of professional practice. In the event the defendant asserts that he believed his daughter's medical conditions were legitimate, the Government expects to offer evidence of prior events to dispute this assertion.

*D. Summary Witness and Summary Charts*

To assist the jury in the examination of the evidence that will be introduced to prove the charges in the indictment, the Government will introduce summary charts and schedules, and the testimony of summary witnesses. The summary witnesses will testify as to financial transactions, prescription records, and telephone records. Summary schedules, charts, and correlating testimony are all permissible, and recommended, where, as here, the underlying records relied upon are voluminous and cannot conveniently be examined by the court, and the summaries can be helpful to the trier of fact. *See* Fed. R. Evid. 611, 702 and 1006. The

defendant has received copies of the draft summaries. The defendant is also in possession of the underlying documents supporting the summaries.

*E. Statements of the Defendant*

The Government anticipates offering statements made by the defendant both in writing (via email) and orally to agents. These statements are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A).

The Government anticipates that the defendant will call Dr. Carlyle Voss as a witness. Absent the defendant first testifying, Dr. Voss should not be permitted to offer hearsay statements of the defendant (or any other person with whom Dr. Voss spoke). If the defendant intends to put on a defense that he believed his daughter, he should have to first testify rather than attempt to establish this defense through Dr. Voss alone.

Dr. Voss is not expected to testify as a clinician, so the exception in Rule 803(4) for statements made for purposes of medical diagnosis or treatment does not apply. Nor would the statements be admissible under Rule 803(3) as statements of Defendant's then-existing state of mind. To be admissible under this rule, "[t]he statement must be contemporaneous with the mental state sought to be proven." *Weinstein's Federal Evidence* § 803.05 (2015). The mental state sought to be proven in this case is Defendant's mental state in 2008-2013. Defendant's statements to Dr. Voss in 2016 are not contemporaneous with those years. *See United States v. Christensen*, 2016 U.S. Dist. LEXIS 61673 (D. Ariz. May 10, 2016).

*F. Rule 704(b)*

If Dr. Voss testifies, he should be precluded from testifying about the defendant's ultimate mental state. The leeway enjoyed by the district court in determining the scope of expert witness testimony is limited by Rule 704(b) of the Federal Rules of Evidence, which

prohibits an expert witness from testifying that a "defendant did or did not have the mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704(b); *United States v. Peña-Santo*, 809 F.3d 686, 694 (1st Cir. 2015); *see also United States v. Valle*, 72 F.3d 210, 216 (1st Cir. 1995) ("Rule 704(b) prohibits all direct expert testimony concerning a criminal defendant's intent, regardless of the witness's field of expertise, so long as intent is an element of the crime charged.").

*G. Cell Tower Testimony*

The Government expects to offer cell site evidence – obtained from phone records – showing the location cell towers serving cell phone calls placed by the defendant. This information is captured on business records maintained by the phone company. The Government expects that a record custodian and/or a DEA analyst will testify as to location of the cell tower serving certain telephone calls. This data is recorded based on GPS coordinates of the tower reflected on the business records.

This testimony is properly presented by a lay witness who will interpret the phone records. *See, e.g., United States v. Baker*, 2012 U.S. App. LEXIS 19470 (3d Cir. Sept. 17, 2012), *United States v. Henderson*, 2011 U.S. Dist. LEXIS 138802 (N.D. Okla. Dec. 1, 2011) ("A reasonably competent layperson, given a small amount of information, could easily examine a cell-phone record and determine the identity of the cell tower that handled a particular call. That same layperson, given a map of cell towers in the area, could identify the approximate location of the cell phone at the time the call was made or received."); *United States v. Fama*, 2012 U.S. Dist. LEXIS 174887, *7-8 (E.D.N.Y. Dec. 7, 2012) (stating that cell site testimony "will not implicate scientific, technical, or other specialized knowledge but will reflect common sense

reasoning familiar to everyday life with respect to cellular phone records and how they interact with cell tower cites.").

**VII. STIPULATIONS**

The parties have thus far reached two stipulations. The first concerns the authenticity of email records. The second concerns Florida medical bills at issue in this case.

**VIII. CONCLUSION**

The foregoing is a summary of the legal and evidentiary issues likely to arise at trial. The Government respectfully requests leave to submit further memoranda as necessary to assist the Court.

Dated: October 24, 2016

Respectfully submitted,

Richard W. Murphy
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

/s/David B. Joyce
/s/James W. Chapman, Jr.
Assistant U.S. Attorneys
United States Attorney's Office

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I electronically filed this Government's Trial Brief with the Clerk of Court using the CM/ECF system which will send notifications of such filing(s) to all counsel of record.

Respectfully submitted,

Richard W. Murphy
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

/s/David B. Joyce
/s/James W. Chapman, Jr.
Assistant U.S. Attorneys
United States Attorney's Office